IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NANCY HARPER                                                                PLAINTIFF

v.                                                       Civil Action No. 3:14-cv-00049-TSL-JCG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                      DEFENDANT

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Plaintiff Nancy Harper's Motion [9] for Summary Judgement.  Pursuant to 42 U.S.C. § 405(g), Harper seeks review of the administrative decision by the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  R. [8] 14-23.  The Commissioner has responded to Harper's Motion by filing a Motion [12] for an Order Affirming the Decision of the Commissioner.  The undersigned submits this Report and Recommendations to the United States District Judge and recommends that Harper's Motion [9] be denied and the Commissioner's [12] granted.

## I.  BACKGROUND

A.   Administrative Proceedings

On October 7, 2010, Harper filed an application with the Social Security Administration for a period of disability, disability insurance benefits, and supplemental security income, asserting an onset of disability beginning December 20, 2005.  Harper later amended her alleged onset date to May 17, 2006.  Harper's application was denied both initially and on reconsideration.  She timely filed a

request for hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a video hearing on October 11, 2012. Harper and a vocational expert witness ("VE") testified at the hearing. The ALJ issued a decision on October 16, 2012, finding that from May 17, 2006, through the date of decision, Harper was not disabled within the meaning of the Social Security Act. On December 18, 2013, the Appeals Council denied Harper's request for review of the ALJ's decision, thereby rendering the ALJ's decision as the final decision of the Commissioner. Having exhausted her administrative remedies, Harper timely commenced the present action by Complaint filed January 22, 2014.

B.   Statement of Facts

Harper alleges disability due to asthma, carpal tunnel syndrome, high blood pressure, anxiety, and diabetes. Harper was 50 years of age on the alleged disability onset date of May 17, 2006. She has a seventh grade education and past work experience as a short order cook, sewing machine operator, wire harness assembler, and order puller. R. [8] 94, 152-53.

After reviewing Harper's medical records and evaluating the testimony at the administrative hearing, the ALJ found Harper had the following severe impairments: status post carpal tunnel syndrome release procedures, the right in April 2003 and the left in July 2003; status post November 2007 myocardial infarction; a history of asthma; diabetes mellitus; hypertension; lumbar disc disease; obesity; an affective disorder (depressive) and an anxiety disorder. R. [8] at 16. The ALJ determined that these impairments, singly or in combination, did not

meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ proceeded to a residual functional capacity ("RFC") assessment and found that Harper retained the RFC to perform light work, except with no climbing of ladders, ropes or scaffolds, occasional climbing of ramps or stairs, no concentrated exposure to extreme cold, extreme heat, pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, or chemicals, and she is limited to the performance of simple, routine, and repetitive tasks with only occasional interaction with the public, coworkers or supervisors.  R. [8] at 16-17.  The ALJ determined that Harper was capable of performing her past relevant work as a short order cook, sewing machine operator, and wire harness assembler.  Accordingly, the ALJ concluded that Harper was not disabled from May 17, 2006, through October 16, 2012, the date of the administrative decision.  R. [8] at 22-23.

## II.  ANALYSIS

A.   Administrative Review

A review of the Commissioner's denial of benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the Commissioner applied the correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence must be more than a mere scintilla, but it need not be a preponderance.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The Court's role is to scrutinize the entire record to ascertain whether

substantial evidence supports the Commissioner's findings. *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This is so, even if the Court determines that the evidence could allow for a different finding. *Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir. 1980).

As summarized by the United States Court of Appeals for the Fifth Circuit,

> [t]he claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572(a) and (b). The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.
>
> The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that she is no longer capable of performing her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

*Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000).

B.   Analysis of the Alleged Errors and Applicable Law

   1.   Residual Effects of Harper's 2003 Bilateral Carpal Syndrome Release Procedures

Harper appeals the ALJ's RFC assessment at step four because "[t]he limitations found by the ALJ include no limitation as to Claimant's ability to handle and finger during her work tasks." Pl.'s Mem. [10] 11.  At step four, the ALJ assessed Harper's RFC, compared it to her past relevant work, and determined that Harper could perform her past relevant work as a short order cook, sewing machine operator, and wire harness assembler.  R. [8] 22.  It is Harper's position that the ALJ was required to include handling and fingering limitations in the RFC because the ALJ found Harper's history of bilateral carpal tunnel syndrome release procedures in 2003 to be a "severe impairment" in step two.  In other words, Harper maintains that the ALJ was required to include limitations in the RFC for all impairments deemed "severe" in step two.

A "severe impairment" is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 CFR 404.1520(c).  "Courts generally consider the severity standard to be 'a de minimus' screening device to dispose of groundless claims." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Court § 3:14 (2014 ed.)(collecting cases).  "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the

individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985).

The consideration of whether Harper's impairments are severe at step two is a different inquiry than the ALJ's assessment of the claimant's RFC. "A claimant is not entitled to Social Security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits." *Gutierrez v. Barnhart,* No. 04-11025, 2005 WL 1994289, *9 (5th Cir. Aug. 19, 2005). Harper has offered no case law in support of her argument that an ALJ must assign a limitation for every impairment meeting the minimal, threshold definition of a severe impairment. The Court has conducted its own research and found many opinions rejecting Harper's position. *See Kozlowski v. Colvin,* No. 4:13cv020-A, 2014 WL 948653, *5-6 (N.D. Tex. Mar. 11, 2014); *Davis v. Comm'r of Soc. Sec.,* No. 6:12cv1694-Orl-36TBS, 2013 WL 6182235, *6-7 (M.D. Fla. Nov. 25, 2013)("An impairment that causes no independent limitations will not affect the RFC assessment")(collecting cases); *Martinez v. Colvin,* No. 4:12cv542-A, 2013 WL 5227060, *7 (N.D. Tex. Sept. 16, 2013); *Adams v. Colvin,* No. 4:12cv490-A, 2013 WL 5193095, *9 n.6 (N.D. Tex. Sept. 13, 2013).

The ALJ specifically discussed Harper's history of bilateral carpal tunnel syndrome release procedures in 2003 and found "no objective medical evidence to establish any significant residuals from this." R. [8] at 20. The ALJ's decision

summarizes the evidence in the record supporting his conclusion.

> Subsequent treatment records from Dr. C. McLeod dated March 11, 2005, indicate that the claimant's wrist/hand pain was completely resolved. Tinel signs and Phalen signs were negative bilaterally. There were no sensory abnormalities. Motor strength was full at 5/5. Treating physician McLeod advises that the claimant can work without any restrictions.

R. [8] at 17.

> The claimant was examined by consultative physician A. Pasha on December 14, 2010. Dr. Pasha's objective medical findings on examination were unremarkable. Significantly, grip and dexterity for the hands bilaterally was normal. Motor strength was full at 5/5.

*Id.* at 18.

> The treatment notes from the Sebastopol Clinic from 2011 and 2012 list unremarkable objective medical findings on examination, as recounted above.

*Id.* at 20.

The ALJ considered the Physical Residual Functional Capacity Assessment of Dr. Robert Culpepper, M.D., who found no established manipulative limitations in the areas of reaching, handling, or fingering. R. [8] 18, 372. The ALJ further relied on the testimony of the VE, whose specialized knowledge of work requirements was not challenged by Harper. When presented with a hypothetical closely tailored to an individual of Harper's age, education, work history, and RFC, the VE opined that such an individual is able to perform the jobs of sewing machine operator, wire harness assembler, and order puller. R. [8] 95.

The ALJ found Harper's "allegations of debilitating symptoms and

limitations are not credible. . . . [T]he objective medical evidence (diagnostic testing and objective medical findings on examination) . . . does not establish conditions that could reasonably be expected to produce the very serious pain and limitations that the claimant testified to at the hearing." *Id.* at 22.

Harper contends that the ALJ erred by not giving significant, if not controlling weight, to the opinion of Dr. Sheila Lindley who performed an independent medical evaluation of Harper on November 17, 2005, in connection with a workers compensation claim Harper was pursuing at that time. Dr. Lindley disagreed with Dr. McLeod's conclusion made on March 11, 2005, that Harper could return to work without any restrictions. Dr. Lindley opined that Harper could not perform repetitive job activities that would require her to extend and flex her wrist or that would not allow her to stop if it required more than 10 minutes without rest. R. [8] at 301.

The ALJ explained that he gave little weight to Dr. Lindley's opinion because Dr. Lindley was not a regular treating source, she examined Harper only once, and her opinion was contrary to the objective medical evidence showing that Harper "made a very good recovery from the 2003 bilateral carpal tunnel syndrome release procedures with treating physician McLeod releasing the claimant to work in March 2005 with no restrictions and with all of the relevant objective medical findings on examination relative to the claimant's hands being normal since then." R. [8] at 21.

The ALJ properly performed his function as the trier of fact and in accord with Social Security regulations governing the evaluation of medical opinions. 20

C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ is entitled to determine the credibility of the medical experts and lay witnesses and weigh their opinions accordingly. *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994).  The evidence cited by the ALJ in support of his finding that Harper's history of carpal tunnel syndrome resulted in no "significant residuals" easily exceeds "more than a mere scintilla" of evidence.  The ALJ's findings of fact which are supported by substantial evidence are conclusive.  *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

    2.    <u>Harper's Mental RFC of "Simple" and the DOT Reasoning Development Levels</u>

Harper maintains that the ALJ violated Social Security Ruling 00-4p, which provides that occupational evidence provided by a VE "generally should be consistent with the occupational information supplied by the DOT," and that, in the face of an "apparent, unresolved conflict," the ALJ must elicit a reasonable explanation before relying on the VE's testimony.  SSR 004-p, 2000 WL 1898704, *2 (S.S.A. Dec. 4, 2000).  Harper asserts that the ALJ erred by failing to address a conflict between the VE's testimony that Harper could perform past relevant work, and the ALJ's finding that Harper was limited to "the performance of simple, routine and repetitive tasks with only occasional interaction with the public, coworkers, or supervisors."

The Dictionary of Occupational Titles ("DOT") classifies occupations based upon General Education Development in mathematics, literacy, and reading.  DOT Appendix C, Section III, 1991 WL 688702.  Reasoning development is rated on a

scale of one to six. The DOT's reasoning development level for the job of sewing machine operator and wire harness assembler is 2, and the reasoning development level for a short order cook is 3.

The undersigned must note that the ALJ's decision incorrectly states that the VE testified that a person closely similar to Harper's age, education, work history, and RFC, could perform the jobs of *short order cook*, sewing machine operator, and wire harness assembler. R. [8] 22. Actually, the VE testified that a person closely similar to Harper's age, education, work history, and RFC, could perform the jobs of *order puller*, sewing machine operator, and wire harness assembler. R. [8] 95. This error is harmless, however, because under either scenario, the ALJ's finding that Harper could perform past relevant work is supported by substantial evidence and in accord with correct legal standards.

According to Harper, the ALJ's finding that she could perform jobs assigned a reasoning development level of 2 or 3 is incompatible with his finding that she is limited to the performance of "simple" tasks. Harper posits that only jobs with reasoning developments of 1 can correspond with the term "simple." Pl.'s Mem. [10] 16-17. Harper submits that because the VE's testimony conflicted with the DOT, the ALJ was required to explain why he chose the VE's opinion over the DOT. Harper maintains that this case must be remanded because the ALJ provided no explanation.

The ALJ properly relied on the VE's testimony in this instance. Both the Seventh Circuit and Eighth Circuit have held that a job requiring a reasoning

development level of 3 does not necessarily conflict with an RFC limited to simple tasks. *See Terry v. Astrue,* 580 F.3d 471, 478 (7th Cir. 2009); *Hillier v. Soc. Sec. Admin.,* 486 F.3d 359, 367 (8th Cir. 2007). Many federal district courts have agreed. *Fisk v. Colvin,* No. 6:13cv410-TC, 2014 WL 667590, *3 (D. Oregon Feb. 20, 2014)(collecting federal district court cases). This Court, in *Abel v. Astrue*, found no "obvious, direct conflict." No. 3:09cv327-TSL-FKB, 2011 WL 1099890, *7 (S.D. Miss. Mar. 2, 2011), report and recommendations adopted, 2011 WL 1044155 (S.D. Miss. Mar. 22, 2011).

Assuming that a conflict existed between the VE's testimony and the DOT, this conflict was not "apparent" because Harper failed to raise the issue before the ALJ. *Abel,* 2011 WL 1099890 at *7. Here, the ALJ presented the VE with a hypothetical that contained the limitation of "simple" tasks. R. [8] 95. The VE opined that an individual like Harper with an RFC including this limitation could perform the jobs of sewing machine operator, wire harness assembler, and order puller. R. [8] 95. The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE responded that it was consistent. R. [8] 95. Harper's counsel cross-examined the VE, but not regarding this issue. *Id.* at 96-98. Harper's counsel also did not raise the issue of a potential conflict during closing statements or otherwise. *Id.* at 98.

Because there is no "obvious, direct conflict" between the VE's testimony and the DOT, the ALJ was not required to explore the matter further than he did. *Abel,*

2011 WL 1099890 at *7. Under the circumstances here, the VE's unchallenged testimony was an adequate basis upon which the ALJ could rely in determining that Harper was capable of performing past relevant work. *Id.* "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel,* 230 F.3d 131, 146-47 (5th Cir. 2000).

## III.  RECOMMENDATIONS

For the reasons stated, the undersigned is of the opinion that the Commissioner's decision is supported by substantial evidence and in accord with correct legal standards. It is recommended that (1) Harper's [9] Motion for Summary Judgment be denied, and (2) the Commissioner's [12] Motion for an Order Affirming the Decision of the Commissioner be granted.

## IV.  NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 29th day of January, 2015.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE